PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3860
_____


DAVID W. COVELL; MARGARET COVELL, Plenary
Guardians of the Person of David F. Covell,
Appellants

v.

BELL SPORTS, INC.; EASTON-BELL SPORTS, INC.;
PERFORMANCE, INC.

v.

MICHAEL KENIG; ARCHDIOCESE OF PHILADELPHIA.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-02470)
District Judge: Honorable Paul S. Diamond

_____

Argued on June 21, 2011

1

Before: HARDIMAN and ALDISERT, <u>Circuit Judges</u>, and
RESTANI,[*] <u>Judge</u>.

(Filed: July 12, 2011)

Daniel L. Thistle, Esq. *ARGUED*
THE THISTLE LAW FIRM
1845 Walnut Street, Suite 2350
Philadelphia, PA 19103

*Attorneys for Appellant*

Barbara R. Axelrod, Esq.
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA 19107

Clifford A. Rieders, Esq.
Pamela L. Shipman, Esq.
RIEDERS, TRAVIS, HUMPHREY, HARRIS, WATERS &
WAFFENSCHMIDT
161 West Third Street
Williamsport, PA. 17701

*Amicus Curiae for Appellant*

C. Scott Toomey, Esq. *ARGUED*
Katherine A. Wang, Esq.

---

[*] Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

LITTLETON JOYCE UGHETTA PARK & KELLY LLP
150 N. Radnor Chester Road, Suite F-200
Radnor, PA 19087

*Attorneys for Appellee*

Edward M. Koch, Esq.
Edward F. Beitz, Esq.
WHITE AND WILLIAMS LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395

*Amicus Curiae for Appellee*

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

David W. Covell and Margaret Covell, who are plenary guardians of their adult son David F. Covell, appeal from a jury's verdict for the defendant in their products liability suit against Easton-Bell Sports, Inc. They urge us to order a new trial on the ground that the District Court erred by admitting evidence and charging the jury pursuant to sections 1 and 2 of the Restatement (Third) of Torts (1998),

3

rather than section 402A of the Restatement (Second) of Torts (1965). Having held in <u>Berrier v. Simplicity Manufacturing, Inc.</u>, 563 F.3d 38 (3d Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 553 (2009), that federal district courts applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts, and seeing no reason to reverse course now, we will affirm.

I.

David F. Covell, a 36 year-old schoolteacher, sustained serious brain injuries when he was struck by a car while bicycling to work in 2007. Tragically, he is now so disabled that his parents (the "Covells") have been appointed his legal guardians. In that capacity, they filed this products liability suit against Easton-Bell Sports, Inc. ("Bell"), which manufactured the "Giro Monza" bicycle helmet their son wore during the collision. Their suit, filed in the Pennsylvania Court of Common Pleas, alleged that the Giro Monza helmet was defectively designed and that it lacked adequate warnings about danger from impact to the helmet's edge. Bell removed the case to the United States District Court for the Eastern District of Pennsylvania, where the trial proceeded according to Pennsylvania substantive law.

At trial, and over the Covells' strident objections, the District Court permitted Bell to introduce expert testimony that was based in part upon the United States Consumer Product Safety Commission's Safety Standard for Bicycle Helmets (the "CPSC Standard"). The CPSC Standard is an administrative regulation that provides an exacting set of guidelines for impact resistance, head covering, labels on helmets and helmet boxes, helmet resistance to temperature

and moisture, manufacturer recordkeeping, and much more. See 16 C.F.R. § 1203. Forced to respond to Bell's expert, the Covells offered their own expert testimony regarding the CPSC Standard. Ultimately, experts for both sides agreed that the CPSC Standard forms the starting point for any bicycle helmet design, and that the Giro Monza helmet satisfied the CPSC Standard in all respects.

At the trial's conclusion, the District Court instructed the jury pursuant to sections 1 and 2 of the Restatement (Third) of Torts. The Court also instructed the jury that, in determining whether the Giro Monza helmet was or was not defective, it could consider evidence of standards or customs in the bicycle helmet industry, including the CPSC Standard. The jury returned a verdict for the defense, finding that the helmet was not defective. The Covells timely filed this appeal.

## II.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review issues of law de novo. Bear Mt. Orchards, Inc. v. Mich-Kim, Inc., 623 F.3d 163, 169 (3d Cir. 2010). This includes a District Court's decision to admit or exclude evidence pursuant to Pennsylvania law. Dillinger v. Caterpillar, Inc., 959 F.2d 430, 434-435 (3d Cir. 1992).

## III.

The Covells call to our attention two assignments of

error. First, they contend that the District Court should not have applied the Restatement (Third) of Torts when instructing the jury and when admitting evidence of the CPSC Standard. Second, they contend that even if it was proper to apply the Restatement (Third) of Torts, the CPSC Standard was nonetheless inadmissible. We disagree and will affirm the District Court on both counts.

## A.

We begin with the District Court's decisions to admit evidence and to instruct the jury pursuant to the Restatement (Third) and not the Restatement (Second) of Torts. We note at the outset that the question the Covells present—what is the law of Pennsylvania: section 402A of the Restatement (Second) of Torts, or sections 1 and 2 of the Restatement (Third) of Torts?—is one we laid to rest only 24 months ago in Berrier v. Simplicity Manufacturing, Inc., 563 F.3d 38, 40 (3d Cir. 2009) (holding that if confronted with the question, the Supreme Court of Pennsylvania would apply sections 1 and 2 of the Restatement (Third) of Torts to products liability cases), cert. denied, 130 S. Ct. 553 (2009). After examining the contentions of the parties and the recent decisions of Pennsylvania's highest court, we conclude that the state of the law is no different now than it was when we decided Berrier. Rather than exhume the arguments and considerations we laid to rest there, we will apply stare decisis.

## 1.

In past products liability cases, the Supreme Court of Pennsylvania has looked to section 402A of the Restatement (Second) of Torts. E.g., Webb v. Zern, 220 A.2d 853, 854

6

(Pa. 1966) ("We hereby adopt the foregoing language [of § 402A] as the law of Pennsylvania."). Section 402A makes sellers liable for harm caused to consumers by unreasonably dangerous products, even if the seller exercised reasonable care:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

   (a) the seller is engaged in the business of selling such a product, and

   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

   (a) the seller has exercised all possible care in the preparation and sale of his product, and

   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965). Section 402A thus creates a strict liability regime by insulating products

liability cases from negligence concepts. See id. § 402A(2)(a); Azzarello v. Black Bros. Co., 391 A.2d 1020, 1025-1026 (Pa. 1978) (charging courts to avoid negligence concepts when instructing a jury pursuant to § 402A.).

During the past 40 years, however, the Supreme Court of Pennsylvania has repeatedly addressed confusion arising from a core conflict in the structure of section 402A itself: Section 402A instructs courts to ignore evidence that the seller "exercised all possible care in the preparation and sale of his product," § 402A(2)(a), yet imposes liability only for products that are "unreasonably dangerous," § 402A(1). In many cases it is difficult or impossible to determine whether a product is "unreasonably dangerous" to consumers without reference to evidence that the seller did or did not exercise "care in the preparation" of the product. See Schmidt v. Boardman Co., 11 A.3d 924, 940 (Pa. 2011) ("This no-negligence-in-strict-liability rubric has resulted in material ambiguities and inconsistency in Pennsylvania's procedure."); see also Phillips v. Cricket Lighters, 841 A.2d 1000, 1015-1016 (Pa. 2003) (Saylor, J., dissenting).

Nonetheless, the Supreme Court of Pennsylvania has endeavored to segregate strict liability's "product-oriented" analysis from the "conduct-oriented" analysis of negligence. Phillips, 841 A.2d at 1006 ("[W]e have remained steadfast in our proclamations that negligence concepts should not be imported into strict liability law . . ."). In so doing, Pennsylvania's high court has stated repeatedly that negligence concepts have no place in products liability. E.g., id.; Azzarello, 391 A.2d at 1025-1026. That endeavor has not always been successful, see Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997) (holding that if a "product has

8

reached the user or consumer with substantial change," liability depends upon "whether the manufacturer could have reasonably expected or foreseen such an alteration of its product.") (emphasis added), nor has it been uniformly embraced by the Justices of that Court, <u>see</u> <u>Schmidt</u>, 11 A.3d at 940 (disapproving of Pennsylvania's "almost unfathomable approach to products litigation") (quotation omitted).

The American Law Institute responded to the core conflict in section 402A when it published the Restatement (Third) of Torts. Sections 1 and 2 of the Restatement (Third) of Torts abandon entirely the negligence-versus-strict-liability distinction that has caused so much trouble in Pennsylvania:

> **§ 1: Liability of Commercial Seller or Distributor for Harm Caused by Defective Products**
>
> One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.
>
> **§ 2: Categories of Product Defect**
>
> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
>
> (a) contains a manufacturing defect when

9

the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts §§ 1-2 (1998).

Section 1 thus makes sellers liable only for the sale of products that are "defective," and section 2 provides that a product may qualify as "defective" if it meets one of three

10

sets of criteria. The criteria—which incorporate negligence concepts such as "foreseeable risk" and "care" directly into the definition of "defective"—amount to an express rejection of the "no negligence in products liability" regime that the Supreme Court of Pennsylvania has endorsed in cases like Azzarello, 391 A.2d at 1025-1026. Several Justices of the Supreme Court of Pennsylvania have expressed the view that section 402A's approach is antiquated and should be replaced. See, e.g., Phillips, 841 A.2d at 1015-1016 (Saylor, J., Castille, J., & Eakin, J., concurring) ("I believe that the time has come for this Court, in the manner of so many other jurisdictions, to expressly recognize the essential role of risk-utility balancing, a concept derived from negligence doctrine, in design defect litigation."). Whether or when that Court will move from the Restatement (Second) to the Restatement (Third) of Torts are questions that have engendered much debate.

They are also questions that have challenged this Court. In Berrier, we noted that the Supreme Court of Pennsylvania had not yet answered whether bystanders could recover on design defect claims. This question, in turn, required us to determine whether products liability cases are governed by the Restatement (Second) or the Restatement (Third) of Torts, and we stated that "[i]n the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide this case." 563 F.3d at 45-46. After reviewing "relevant state precedents, analogous decisions, considered dicta, scholarly works, and . . . other reliable data," id. at 46, we concluded that "if the Pennsylvania Supreme Court were confronted with this issue, it would adopt the Restatement (Third) of

11

Torts, §§ 1 and 2," id. at 40. Thus, we held that federal courts sitting in diversity and applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts. Id. The precedential holding in Berrier, as set forth above, represents this Court's view of Pennsylvania's products liability law.

2.

The District Court followed Berrier. In so doing it admitted evidence of the CPSC Standard as relevant to the amount of care Bell exercised, and it instructed the jury according to the framework set forth in sections 1 and 2 of the Restatement (Third) of Torts. The Covells contend that these decisions by the District Court were erroneous, because they would be improper under section 402A of the Restatement (Second) of Torts. They maintain that section 402A "has been the law in Pennsylvania since it was adopted in Webb v. Zern, [220 A.2d 853 (Pa. 1966)]" and that "[n]o decision of the Pennsylvania Supreme Court has changed this." If the District Court had applied the Restatement (Second) of Torts, it would not have permitted Bell to admit evidence of the CPSC Standard (because due care is irrelevant under the Restatement (Second) of Torts), and it would not have instructed the jury to consider whether the Giro Monza helmet was "unreasonably" dangerous (because the only relevant inquiry under the Restatement (Second) of Torts is whether the product itself was defective). The Covells maintain that each of these decisions by the District Court violated the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), as set forth in Van Dusen v. Barrack, 376 U.S. 612 (1964), which requires federal courts sitting in diversity to apply state substantive law. 376 U.S. at 638

12

(Stating that, "[t]he nub of the policy that underlies [Erie] is that . . . a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result."). In short, the Covells' position is that section 402A is the law of Pennsylvania, and that when the District Court applied the Restatement (Third) of Torts it permitted Bell to illicitly "utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." Id.

In response, Bell directs us to our decision in Berrier, 563 F.3d at 40, wherein we held that if confronted with the issue, the Supreme Court of Pennsylvania would apply sections 1 and 2 of the Restatement (Third) and not section 402A of the Restatement (Second) of Torts. Such predictions by a federal court sitting in diversity are permissible absent a controlling decision by a state's highest court. Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000). Bell's position is that the District Court in this case did not err, because it followed Berrier's precedential prediction of Pennsylvania law.

We will affirm the District Court's application of sections 1 and 2 of the Restatement (Third) of Torts. Much of the briefing from the parties, and all of the briefing from the amici, is devoted to which Restatement of Torts is best as a matter of policy, and which most logically extends the decisions of the Supreme Court of Pennsylvania—all of which are issues we waded through and resolved only two years ago when we decided Berrier. This means that, notwithstanding the volume of briefing in this case, the dispositive question we must answer is straightforward: do we follow Berrier?

13

3.

We will follow <u>Berrier</u>, and affirm the District Court. First, our Internal Operating Procedures instruct us to follow prior panels' decisions:

> **Policy of Avoiding Intra-circuit Conflict of Precedent.**
>
> It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.

3d Cir. I.O.P. 9.1 (2010).

"Although a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel, a panel may reevaluate a precedent in light of intervening authority," including intervening decisions of state law but its highest court. <u>Reich v. D.M. Sabia Co.</u>, 90 F.3d 854, 858 (3d. Cir. 1996) (internal citation omitted). In this vein, the Covells direct our attention to <u>Bugosh v. I.U. North America, Inc.</u>, 942 A.2d 897 (Pa. 2008), <u>appeal dismissed as improvidently granted by</u> 971 A.2d 1228 (Pa. 2009). The <u>Bugosh</u> petitioner had sought a holding from the Supreme Court of Pennsylvania declaring that the Restatement (Third) and not the Restatement (Second) of Torts reflects the law of Pennsylvania. The Court granted allocatur on the issue in 2008, but in 2009 dismissed the appeal as improvidently

14

granted. <u>Bugosh</u>, 971 A.2d 1228. The Covells urge us to hold that the dismissal of <u>Bugosh</u> indicates the Supreme Court of Pennsylvania's contentment with the Restatement (Second) of Torts.

We will not do so. Reading the tea leaves of a certiorari or allocatur dismissal is risky business; one could just as reasonably conclude that the dismissal here indicates the Court's approval of <u>Berrier</u> as much as it indicates its approval of section 402A. That is why the Supreme Court of Pennsylvania has warned against reading between the lines of an allocatur dismissal:

> In the circumstance where we have accepted an issue by granting allowance of appeal, and this Court, after conducting our review of the issue, enters an order dismissing the appeal as having been <u>improvidently granted</u>, the effect is as though this Court never granted allowance of appeal. In other words, a dismissal as being <u>improvidently granted</u> has the exact same effect as if this Court had denied the petition for allowance of appeal (allocatur) in the first place. Where we dismiss an appeal as <u>improvidently granted</u>, the lower tribunal's opinion and order stand as a decision of that court and this Court's order has <u>no</u> precedential value.

<u>Commonwealth v. Tilghman</u>, 673 A.2d 898, 904 (Pa. 1996) (emphasis in original); <u>see also</u> <u>Salazar v. Allstate Ins. Co.</u>, 702 A.2d 1038, 1043 n.10 (Pa. 1997) ("[T]he fact that this court denied allowance of appeal . . . is no indication of our endorsement of the reasoning used by the Superior Court.").

15

We therefore conclude that, in light of the Supreme Court of Pennsylvania's directives in Tilghman and Salazar, the Bugosh appeal was an intervening event, but not an intervening "authority" sufficient to revisit our holding in Berrier.

Given that Bugosh is of no consequence, we conclude that the state of the law in Pennsylvania is exactly as it was when we decided Berrier. Absent a change in Pennsylvania's law, we see no reason to upset our precedent. Applying Berrier, we hold that the District Court did not err in using the Restatement (Third) of Torts to guide its decisions to admit evidence, and to frame its jury instructions.

B.

The Covells' fallback contention is that even if sections 1 and 2 of the Restatement (Third) of Torts were the law of Pennsylvania (i.e., even if the jury instructions in this case were correct), the District Court nonetheless erred by admitting evidence of the CPSC Standard. The Covells point out that the CPSC Standard is an "industry regulation" as described in section 4 of the Restatement (Third) of Torts, which—unlike sections 1 and 2—has not been cited or discussed by the Supreme Court of Pennsylvania. Cf. Berrier, 563 F.3d at 40 (holding only that the Supreme Court of Pennsylvania would apply sections 1 and 2 of the Restatement (Third) of Torts to products liability cases), The Covells maintain that if we affirm the District Court on this point we will apply section 4 before the Supreme Court of Pennsylvania does so—something to be avoided in a diversity case. Cf. Van Dusen, 376 U.S. at 638. We conclude that we need break no new ground today; we will affirm the District

16

Court without resort to section 4 of the Restatement (Third) of Torts because the CPSC Standard was admissible pursuant to section 2.

The Covells are correct that most jurisdictions applying the Restatement (Third) of Torts to products liability cases hold that evidence of compliance with product regulations is admissible to prove whether or not a product is defective. E.g., Doyle v. Volkswagenwerk Aktiengesellschaft, 481 S.E.2d 518, 521 (Ga. 1997). Courts in jurisdictions that have incorporated the entirety of the Restatement (Third) of Torts are free to admit such evidence under section 4, which provides:

> **Noncompliance and Compliance with Product Safety Statutes or Regulations**
>
> In connection with liability for defective design or inadequate instructions or warnings:
>
> (a) a product's noncompliance with an applicable product safety statute or administrative regulation renders the product defective with respect to the risk sought to be reduced by the statute or regulation; and
>
> (b) a product's compliance with an applicable product safety standard or administrative regulation is properly considered in determining whether the product is defective with respect to the risks sought to be reduced by the statute or regulation, but such compliance does not preclude as a matter of

law a finding of a product defect.

The District Court admitted such evidence in this case. It permitted Bell to demonstrate its compliance with the CPSC Standard, 16 C.F.R. § 1203, as evidence that its helmet was not "defective," under section 2 of the Restatement (Third) of Torts.

The Covells contend that this was reversible error because section 4, not section 2, of the Restatement (Third) of Torts deals with governmental regulations, and—setting aside all debate over the validity of our holding in Berrier—there has been no indication from the Supreme Court of Pennsylvania that it would apply section 4. Because section 4 is not in play, they contend, there was no basis upon which the District Court could have admitted evidence of Bell's compliance with the CPSC Standard, regardless of which version of the Restatement it applied. For support, they rely upon Lewis v. Coffing Hoist Division, Duff-Norton, Co., 528 A.2d 590, 594 (Pa. 1987), which applied section 402A and held that evidence of industry practice or regulation is inadmissible in products liability cases. The Lewis Court reasoned that to admit industry practice and regulation in products liability cases would be to "improperly [bring] into the case concepts of negligence law." Id.

We are not persuaded. As a threshold matter, we believe that to cite to Lewis is to beg the very question at issue in this appeal: may district courts applying Pennsylvania law to products liability cases admit evidence that is relevant to negligence-type concepts, like duty of care or forseeability? To rely upon Lewis (handed down in 1987, during the zenith of Pennsylvania's no-negligence-in-strict-

18

liability regime) would be to assume the question out of existence, because <u>Lewis</u> based its reasoning entirely upon the premise that there shall be no negligence in products liability. <u>See</u> <u>id.</u> No longer can a court assume that premise is true—<u>see</u> <u>Davis</u>, 690 A.2d at 186 (applying certain negligence principles to products liability)—which means, by extension, that no longer can a court assume <u>Lewis</u> accurately reflects the law of Pennsylvania, <u>cf.</u> <u>Aetna Life & Casualty Co. v. Barthelemy</u>, 33 F.3d 189, 193 (3d Cir. 1994) ("Where stops the reason, there stops the rule." (quoting Karl N. Llewellyn, <u>Jurisprudence: Realism in Theory and Practice</u> 217 (1962))).

Whether the District Court erred in admitting evidence of the CPSC Standard thus depends not on pre-<u>Berrier</u> decisions like <u>Lewis</u>, but upon the post-<u>Berrier</u> legal framework that controls Pennsylvania products liability cases. In our view, it is highly unlikely that the Supreme Court of Pennsylvania would apply sections 1 and 2 of the Restatement (Third) of Torts (allowing negligence concepts), but not section 4 (providing for relevant industry regulation). We have difficulty imagining a negligence-friendly products liability regime that ignores compliance or non-compliance with pertinent state and federal regulations. At any rate, we need not determine whether the Supreme Court of Pennsylvania would adopt section 4 because we agree with Bell that evidence of its compliance with the CPSC Standard was relevant to section 2 of the Restatement (Third) of Torts as applied in <u>Berrier</u>, and was admissible pursuant to the Federal Rules of Evidence. The relevancy provisions of the Federal Rules of Evidence control in this case because they are "arguably procedural." <u>See</u> <u>Kelly v. Crown Equip. Co.</u>, 970 F.2d 1273, 1278 (3d Cir. 1992) (Federal Rules of

Evidence that are "arguably procedural" control in diversity actions, "notwithstanding Pennsylvania law to the contrary."). Under the Federal Rules of Evidence, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Rule 401, and "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority," Rule 402.

Applying this standard, we conclude that evidence of Bell's compliance with the CPSC Standard was relevant to the jury's inquiry because it went to at least two facts of consequence under section 2 of the Restatement (Third) of Torts, section 2. First, the CPSC Standard sets forth detailed rules for impact resistance and testing, and for labels and warning—both on the helmet and its sales packaging. Evidence that Bell complied with the CPSC Standard's requirement for impact resistance testing makes it "more probable," Rule 401, that "all possible care was exercised in the preparation and marketing of the product," Restatement (Third) of Torts § 2(a). Second, evidence that Bell complied with the CPSC Standard makes it "less probable," Rule 401, that "the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings," Restatement (Third) of Torts § 2(c). Of course, such evidence was not conclusive on these points, but it was relevant and therefore presumptively admissible under the Federal Rules.

Our conclusion in this respect—i.e., that industry

standards and government regulations are relevant to facts of consequence in this case—is also in line with the Commentary to section 2 of the Restatement (Third) of Torts. Comment (b) explicitly states that industry regulations may be relevant to a plaintiff's case under section 2, irrespective of section 4:

> Section 4, dealing with violations of statutory and regulatory norms, also provides an alternate method of establishing defect. A plaintiff is not required to establish the standard for design or warning under § 2, but merely to identify a government-imposed standard.

Id. § 2 comment (b). Further, comment (d) states that defendants may admit evidence of industry practice to show that an alternative design would not have made their product safer:

> The defendant is thus allowed to introduce evidence with regard to industry practice that bears on whether the omission of an alternative design rendered the product not reasonably safe. While such evidence is admissible, it is not necessarily dispositive.

Id. § 2 comment (d). The commentary to section 2 of the Restatement (Third) of Torts thus buttresses our conclusion that evidence related to the CPSC Standard was properly admitted in this case.

In sum, we conclude that we need not consider whether evidence of the CPSC Standard was admissible

21

pursuant to section 4 of the Restatement (Third) of Torts because in this case the evidence was admissible pursuant to section 2, as applied in <u>Berrier</u>. We will therefore affirm the District Court.

* * * * *

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.

_____